The next matter on our calendar is Sean Richard Flynn versus the Commissioner of Social Security. Thanks. Mr. Teresi, you may take the podium. My name is Jim Teresi, and I represent the Plaintiff Appellant, Mr. Flynn. Our primary argument in this social security disability case is a violation of the treating physician regulation, which is 20 CFR 404.1527. Now, in our reply brief, I neglected to do a citation regarding their citation to Camille, which is a summary order case. And that is local rule 32.1.1 says summary orders are not precedent. They are allowed to be cited, and then we look to the cases that are cited in that summary order. In this case- Which case in the summary order do you think is pertinent for us? I mean, that's the whole point of not citing summary orders, is that presumably we have precedent, controlling precedent that applies. So what is it you're relying on? Well, in my reply brief, I went through the various cases they cited. So that's all we need to know. Yes, but there's no case where a non-examining physician that I found, that their opinion comes in and amounts to substantial evidence other than Camille. Well, we do require an ALJ to explain why he or she is rejecting a treating physician, and why he or she is relying on non-treating physicians. Now, the ALJ here did write a lengthy decision, so why don't you tell us why it's inadequate? All right, on page 37 of the defendant's brief, they say there's three types of evidence that show that the administrative law judge properly evaluated the medical evidence. One, Flynn's own treating provider's notes. Two, testimony from the medical expert, Ruggiano, and three, Flynn's own range of activities. Now, regarding those, I want to give an example which, let's see here, page 11 of my brief, where Dr. Edelstein, the treating psychiatrist, did a mental status exam. And there was found to be no grossly depressed state, but there was some- What was the date of that particular exam? The date of the exam? The particular exam you're referring to. I believe it was in 2010, I don't have the exact date. There was mild anxiety, but he was not grossly depressed. Now, throughout the defendant's brief, they point to mental status exams. And some of them are positive, in terms of finding abnormal findings, and some are not. But in this particular note, there had been a suicide gesture that Mr. Flynn reported earlier in the week. In his assessment, Dr. Edelstein said that he was in an episode of emotional dysregulation with a suicide gesture earlier that week. So the point being, they have to be careful in terms of substituting judgment for treating physicians, especially specialists, such as psychiatrists, who are favored in this treating physician regulation. So- I think AOJ found here, because he points in his opinion that during the period when your client was working, he reported to Dr. Edelstein that he was handling the stress condition, but that then there were other problems, and ultimately the AOJ concludes that the kind of work your client can perform is a low stress job with minimal co-worker and little public contact. So that's how he views the limitations identified here. Tell us why that's not supported here, or not supported by even his treating physician? Yes, well, the treating physician opined that Mr. Flynn met the listing requirement. He does not have to meet the listing requirement to be found disabled. He can be found disabled at step five. And the ALJ gave Dr. Edelstein's opinion little weight. Now, under the treating physician regulation, treating physicians are given, generally, more weight than examining physicians. And examining physicians are given more weight than non-exam- I understand that, and so did the ALJ. But he explained why he didn't think that was warranted in this case, and you have to tell us what was wrong with that. I mean, for instance, found that your client worked from April 2011 to November 2012. And normally, that would be a hurdle for your client to clear. Now, as I understand it, he ceased work in what wound up being a suicidal episode. But there were high stress and public contact circumstances that contributed to all of that. So what's the ALJ error here? Well, the main stress was that he was working. I mean, there's different time periods involved. There's the period before- A year and a half, right? Yes, above the substantial gainful activity level, not full time necessarily. That work during that period has the primary probative weight of that is for that time period. And if Mr. Flynn had been found disabled during a period of 12 continuous months or more before then, that would have been a trial work period. If he's found disabled after that, that would also be another time period. So, while we could not argue that that was an unsuccessful work attempt because those are ones under six months, it's a jump to say that it was medically successful. It may have been legally successful. So after that attempt, Dr. Edelstein, in retrospect, after he had the advantage of the longitudinal record, opined that he should not be working. And reiterated his earlier opinion. And where does the ALJ come up with the phrase mild anxiety? Is that from that earliest report of Dr., was it Dr. Edelstein said that? Well- No, well, are you referring to the example I gave? No, I'm talking about in the report, the ALJ says at most this is mild anxiety. Doesn't he say that? I'm not sure, but the main disorder was a mood disorder, which he found to be bipolar. But he said the exact diagnosis was not important. What was important was the functional limitations, which we actually agree with. But I do think it's important to remember it's a mood disorder because it explains some of the things, such as the anger. And it's also important to remember that the ALJ found bipolar disorder, because that involves not just depressed episodes, but the other end of the spectrum. All right, well, we'll hear from the commissioner. You've reserved three minutes for rebuttal. Thank you. Your honors, may it please the court. My name is Padma Gatke. I'm representing the Commissioner of Social Security. The commissioner's regulations and second circuit case law clearly provide that the opinion of a non-examining medical expert can override the opinion of a treating source, as long as the medical expert's opinion is supported by stanchial evidence. Now, we've discussed the cases, including precedential cases, in our brief, so I won't repeat that here. We do understand the applicable principles of law, but you've got a man whose diagnosis as bipolar is accepted, right? Correct. With more than one suicide attempt. How do you not think such a person is disabled? As the ALJ noted, Flynn worked for a period of over a year. And if you read the notes of Dr. Edelstein during that time, Flynn was doing well at that job. He enjoyed it. Excuse me, at the end of that year, he attempted suicide and suffered electroconvulsive shock. Yes, and I'd like to address both of those issues. First, unfortunately, Mr. Flynn did attempt suicide. However, if you look at his notes and his testimony, he went from a job where he was subordinate, for lack of a better word. And his boss went on medical leave, at which point he took over a job because he had that experience. The record shows that's when his decompensation happened, and he ended up in the emergency room, and eventually in the hospital. As you point out, Your Honor, he did receive ECT treatment at that time. As Dr. Rugiano has pointed out, ECT treatment is reserved for cases where medication has not been successful. And the physicians at the hospital where he was treated used it for the same reason. It was only used that one time, it was successful to the point that he was released. And in fact, the hospital physicians who treated him agreed that he could go back to work a couple weeks after that. So, under those circumstances, I submit that Mr. Flynn's suicide attempt and his ECT treatment are not sufficient to show that he's disabled under commissioner's regulations. Now, Mr- That's because temporally he was not affected by, I'm sorry, it was an insufficient temporal. It not only was it insufficient temporal, Your Honor, the type of work he was doing, which led him to decompensate, was not work that the ALJ says he can do. The RFC is for simple, unskilled work with, I believe, no contact with the general public at all. Only superficial brief contact with co-workers and supervisors. That's not the high stress restaurant work that he was doing that caused him to decompensate. So, I think those two things together are why that episode is not sufficient to show that Mr. Flynn is disabled. Now, the ALJ properly evaluated Dr. Edelstein's opinions. He had a very long analysis of the treatment notes. He- And drew his own conclusions from the doctor's treatment notes. Well, it- Is that something that we favor? Well, Your Honor, under the commissioner's regulations, the ALJ is required to look at the supportability of an opinion. And in order to do that, he has to look at the treatment notes. But he has to consider his own medical judgment for Dr. Edelstein's. Well, actually, Your Honor, the ALJ ultimately relied on the opinion of Dr. Rubiano. Now, Dr. Rubiano reviewed- Mr. Flynn, is that correct? That's correct. He did, however, review the entire record. He is a board certified psychiatrist with a specialty in psychiatry and neurology. He's an expert in the social security agency's regulations. He never laid eyes on Mr. Flynn. He did not. He did, however, to speak to your point about interpreting the medical evidence, he is a physician who interpreted the medical evidence, and the ALJ properly relied on his opinion. The ALJ also noted Flynn's activities of daily living over the course of the 10-year period at issue. Flynn served as a stay-at-home father to his wife's three children, who were school age during most of that time. He also worked in a workshop and helped and worked in his large garden. These activities show that the ALJ has the ability, excuse me, that Flynn has the ability to perform work at the RFC that the ALJ found for him. None of those are jobs in the economy, however, keeping a garden or doing childcare, right? That is correct, Your Honor, however- That's the fifth step of the analysis. That's true, and the ALJ properly obtained the testimony of a vocational expert who looked at Flynn's vocational, his age, his education, and his- The jobs he's held in the past. An RFC, I'm sorry, Your Honor? The jobs he's held in the past. And the jobs he's held in the past, determined that he could not, in fact, with that RFC, perform the jobs he's held in the past, like being a cook, which was what he was doing during that 18th month period. And are there jobs in the economy that Mr. Flynn could hold? According to the vocational expert, he could hold the jobs of a price marker, a laundry classifier, or a janitor. So they identified three jobs which exist in significant numbers in the national economy, which is required at step five. Did they meet the test of not having to deal with co-workers? That was part of the hypothetical that the ALJ gave to the VE, so yes. I'm not sure. How can you do that? Read those jobs again. One is a price marker, the other is a laundry classifier, and the third is a janitor. What's the middle one? A laundry classifier. And what is that? If you'll give me a moment, Your Honor, to look at the- What is a laundry classifier? And don't you have to deal with other people when you, you don't have to deal with your laundry, but what about other people? Your Honor, I will admit I am not very familiar with the job of a laundry classifier, but with respect to a janitor, and at step five, the ALJ only has to identify one job. A janitor is essentially someone who cleans an office or a home or what have you. Undistrict supervision, as I understand the job. The RFC does not require that he be unsupervised. It's simply that his interactions with his supervisors be brief and superficial. So not, I would imagine, not an ongoing or a daily interaction. I see. Continue. One of the issues that Flynn has raised in his brief is the materiality of alcohol use. And that is something that the ALJ addressed. Now, materiality of alcohol use is not an issue in this case because there was no finding that Flynn was disabled because of alcohol use. However, the record does show periodic abuse of alcohol by Flynn and- He was self-medicating with alcohol. Isn't that a fair comment? That's not for me to interpret. For me, but the ALJ did. The ALJ is the fact finder in this scenario, and it is for him to, in fact, interpret the facts with all due respect. Here it was reasonable for the ALJ to look at this, look at the opinions that were given to him, or provided in support of Flynn's application, and note that the treating providers who were, in fact, very familiar with Flynn's history of drinking did not, in fact, fully address Flynn's drinking. It was only one of the reasons that the ALJ gave, but it was a reasonable reason, especially when added to the ALJ's analysis of the treatment notes, the activities of daily living, and the opinions as a whole. Therefore, the ALJ's decision is supported by substantial evidence and should be affirmed. Thank you. Thank you, your honors. Teresa, you're reserved three minutes for rebuttal. I'd like to, yes, address some of the points that were made. It was stated that the ECT was used because medication was not successful. That is true, but it was also true that Dr. Reggiano testified that doctors use it when the cases are severe and intractable. Whether they should was a separate question, but the point was that would be their intent. What do we do with the determination by the doctors post the treatment that he could return to work? I don't really think, well, first of all, they weren't the treating doctors. I think what they were saying is more the converse that he should not return for the two weeks. I would assume that they would defer to the treating providers at that point. And then the next point they made was, she made was that the work that Flynn was doing during these 18 months was greater in terms of functional aspects than what the ALJ limited him to. That may be true, but he had worked for 20 years as a cook, and that was really his comfort zone, and he was not working full time. The first job was in a small assisted living facility, and he tried it out. He kind of dipped his foot in the water and then ended up working for 18 months. So I don't really find that persuasive. Now as far as Dr. Reggiano, Dr. Reggiano also did limit Mr. Flynn in moderate ways in the same two functional areas, to a moderate degree I should say. In the same two functional areas as Dr. Edelstein and Ms. Lewis, which was the social and then the persistence aspects. So they limited him, that is Dr. Edelstein and Ms. Lewis, to markedly, which is the next category up. So to say that you should go from controlling weight being given to the treating physician's opinion, to little weight, which is where the ALJ ended up, I'm not sure that's allowed under the regulations in the case law. The next point she made was, he was a stay at home dad. But the notes of the treating providers show that this was his comfort zone. He was easily emotionally dysregulated. And so we don't know to what extent his activities were successful. He testified at the hearings that he would start a project and then give up. His 20 year history of work gives him a factor of credibility under the case law. And therefore, we should tend to believe him. Regarding the last point, self-medication, I agree with that point. The doctors did comment on that, Dr. Edelstein and Ms. Lewis. It's not as though they ignored it. They were in a position, he's in the room with them. They can make that determination as to whether alcohol is a factor. And they decided it was the underlying disorder he was probably trying to cope with a stressful situation. Can I ask you, you're claiming an onset date of 2006, is that right? Yes. Even if we were to agree with you as to the disability of your client, should that onset date be moved forward somewhat, given that he worked for a year and a half? Well, I think the work is at quite a bit of a later time period, so it's hard to say. Well, I mean, it just seems curious that he would be receiving benefits for a period when he worked. So I'm just wondering, if we were to agree with you, and I'm not saying we will, but if we were to agree with you that you established disability, is there a question here about the correct onset date? Well, because of the long time period involved, it is complicated. Normally, if he'd been found disabled during that period, then the subsequent period would be a trial work period where you get nine months and five years. And then you have, I think it's a three year period of extended eligibility. What you could find is he was disabled at the earlier date and the later date, and then it could be remanded to sort out. We wouldn't necessarily find that, right? We would have to ask the ALJ to find it, or the agency, make findings as to the periods of disability. Correct, but the longer the treatment went on, the stronger the opinion becomes of the treating psychiatrist. Thank you. Thank you both. We'll reserve decision. The last case on our calendar is being submitted, so we'll ask the clerk to adjourn court.